PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIANCA GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL DEBT RELIEF LLC, a New York entity,<br><br>Defendant. | Case No.: **'26CV1894 TWR BJW**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)** |

CLASS ACTION COMPLAINT

## I.     NATURE OF ACTION

1.     Defendant National Debt Relief LLC ("NDR") pays commissions to various "affiliate marketers" that spam anyone and everyone they can find.  NDR's marketers send spam using falsified header information, spoofed domains and nonsensical sending addresses to evade spam filters.  They also use false and deceptive subject lines – in short, they do everything that makes people *hate* spam.

2.     Fortunately, California's robust Anti-Spam Law imposes both strict liability and liquidated damages on entities like NDR that benefit from deceptive spam.  It dispenses with the requirement of proving actual damages, intent, or scienter, and forces companies to actively monitor their e-mail promotions by imposing exceptionally broad liability.[1]

## II.     PARTIES, JURISDICTION AND VENUE

3.     Plaintiff is and was at all times mentioned herein a citizen of the State of California who received a misleading spam e-mail promoting NDR's debt resolution services.

4.     NDR is an entity based in New York that offers debt repayment services.

5.     NDR deliberately outsources its solicitation to third-party affiliate marketers to reap the benefits of large-scale unlawful spamming.  NDR financially incentivizes these affiliates — paying them on a per-lead or per-conversion basis — to flood inboxes with deceptive "discounts" on NDR products, knowing that aggressive, non-consensual email campaigns generate sign-ups. These affiliates are not rogue actors; they are integral to NDR's customer-acquisition strategy and are compensated precisely because spam

---

[1]     *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id.* at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id.* at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

CLASS ACTION COMPLAINT

works.  By structuring its marketing this way, NDR attempts to enjoy the profits of illegal email campaigns while plausibly denying responsibility for the very misconduct it knowingly authorizes, directs, and benefits from — conduct squarely prohibited by California Business & Professions Code § 17529.5.

6.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states.  Indeed, based upon publicly available information, the class is believed to include over 10,000 members and the amount in controversy is believed to exceed $100 million.

7.    Venue is proper in this County because a substantial part of the events and omissions giving rise to the claim took place in this District.

### III.    FACTUAL ALLEGATIONS

8.    Plaintiff Bianca Garcia is a California resident and citizen and is the owner of the e-mail address biancamua28@yahoo.com.  NDR spams her and other class members constantly.  In the most recent example, in March of this year she received a spam e-mail from the nonsensical address "ggpztdbkff@rofilmes.com" bearing the subject line **"K☐n☐o☐w ☐E☐x☐a☐c☐t☐l☐y☐ ☐W☐h☐a☐t☐ Y☐o☐u☐'☐r☐e☐ ☐G☐e☐tt☐i☐n☐g☐ ☐I☐n☐t☐o☐**[2]  That spam is attached hereto as Exhibit "A".

---

[2]  The subject line appears normal to a human, but the underlying metadata reveals that it is heavily manipulated with hidden Unicode characters and encoded glyphs inserted between nearly every letter.  Specifically, it is encoded in multiple UTF-8 base64 segments that correspond to non-printing Unicode characters embedded between standard letters.  This does not alter how the subject line looks to a human, but allows the same message to evade spam filters that rely on keyword detection or pattern matching.  This technique—commonly referred to as Unicode padding or zero-width character insertion — is a well-known spam evasion method, as it enables the sender to present a seemingly ordinary, readable subject line to the user while disguising its true structure at the code level to bypass automated filtering systems.

9. The spam was sent from a "spoofed" e-mail address ggpztdbkff@rofilmes.com to conceal the identity of the true sender and evade spam filters.

10. Indeed, after receiving the e-mail, Plaintiff searched the publicly available WHOIS database to identify the sender associated with the domain, but was unable to do so, because the sending domain was not registered to, publicly associated with, or traceable to NDR through WHOIS or any other public registry. In fact, according to the WHOIS registry lookup tool found at https://lookup.icann.org/en/lookup, the domain "rofilmes.com" is registered to an unidentified person in Arizona that has no identifiable relationship with NDR.

11. Plaintiff clicked on the link in the spam and was eventually taken to a landing page of Defendant's website at https://start.nationaldebtrelief.com/apply?utm_source=MDV&transaction_id=10277d72 ae9a2dbd659d89b59e0b86&aff_sub=160005&aff_sub4=CPL&utm_medium=affiliates &aff_sub3=ZISVC5LVA2DFYWNQQRWXELMVCMMRZD4UAOVG6A6K34SQ4 MA%3D&src=MDV&aff_sub2=c438cbd882e04ed2bacb383a89b8410e . The fact that the spam email directed Plaintiff to NDR's landing page containing numerous tracking and attribution parameters demonstrates that the message was part of a coordinated affiliate marketing campaign rather than a one-off communication. The presence of fields such as campaign IDs, publisher identifiers, referral sources, and sub-ID parameters shows that the link was uniquely generated to track the recipient's click, attribute that traffic to a specific marketer or "publisher," and ultimately credit that affiliate for any resulting lead or transaction. This type of infrastructure is standard in affiliate networks and reflects a pay-for-performance model, where third-party marketers are incentivized to drive traffic — often through mass email campaigns — using tracked links supplied or approved by the advertiser. Because NDR receives, processes, and benefits from this tracked traffic, and has the ability to monitor and compensate the affiliate responsible,

CLASS ACTION COMPLAINT

the link structure itself is strong evidence that the email was sent as part of an affiliate spam operation rather than independent or unsolicited conduct.

12.     The email's metadata and embedded code reflect multiple indicia of spam evasion and deceptive marketing practices because they demonstrate deliberate efforts to obscure the sender's identity, bypass authentication protocols, and manipulate how the message is interpreted by both spam filters and recipients. The header information reveals inconsistencies in sender domains and failed or suspicious authentication signals (such as SPF/DKIM/DMARC issues), suggesting the message was relayed through third-party infrastructure or spoofed sources rather than a legitimate, traceable business. At the same time, the subject line and sender name are altered using hidden or non-standard characters (e.g., soft hyphens) to evade keyword-based filtering and disguise the true content of the message. Within the body, the email relies heavily on HTML formatting, image-based content, and tracking-enabled hyperlinks routed through intermediary domains, which mask the ultimate destination and allow the sender to monitor user engagement. The presence of tracking pixels, minimal plain-text content, and generic or misleading branding further indicates a coordinated attempt to maximize deliverability and click-through rates while minimizing transparency, all of which are hallmarks of sophisticated spam and deceptive marketing campaigns

13.     The subject line is deceptive in violation of California Business & Professions Code § 17529.5(a)(2) because, although it appears to be a straightforward and informational statement to the ordinary recipient, it is in fact both technically obfuscated and substantively misleading.  As reflected in the email's metadata, the subject line is broken into encoded UTF-8 segments containing repeated non-visible Unicode glyphs embedded between characters, which are imperceptible to the reader but deliberately inserted to evade spam filters and disguise the message's true structure. This technical manipulation allows the sender to deliver a commercial solicitation under the guise of a benign, individualized message.  At the same time, the substance of the subject line — suggesting that the recipient should "know exactly what you are getting into" —

- 5 -

falsely implies the provision of legitimate, actionable guidance or a genuine solution, when in reality the email is a marketing funnel designed to sell or solicit services. By combining hidden obfuscation techniques with a promise of simple or guaranteed relief that is not actually provided, the subject line is likely to mislead a reasonable recipient as to both the nature and efficacy of the message, rendering it deceptive under § 17529.5.

14. The preceding is just a single example of the spam that Defendant sends to class members. Based on publicly available sources, it is believed that NDR is responsible for over 100,000 spam e-mails to class members every year.

15. Plaintiff's e-mail address is a "California e-mail addresses" because Plaintiff ordinarily accesses the e-mail address from computers in California. *See* Bus. & Prof. Code § 17529.1(b). Citizens of other states who regularly access their e-mail in California are included in the class.

16. The spam identified above is an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with Defendant and because the e-mail was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

17. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit — meaning that consumers must be told clearly that they are agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

18. The above spam violates Bus. & Prof. Code § 17529.5 in three separate and distinct ways:

    a. **Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).** The spam email's use of the domain rofilmes.com constitutes unauthorized use of a domain name in violation of Business and

Professions Code § 17529.5(a)(1) because the domain has no legitimate relationship to NDR and was used solely as a transmission shell to conceal the sender's true identity. Section 17529.5(a)(1) prohibits the use of a domain name in a commercial email that is "falsified, misrepresented, or forged," including where the domain is not owned by, licensed to, or authorized by the advertiser whose goods or services are being promoted. Here, the domain bears no semantic, commercial, or traceable connection to NDR and does not enable a recipient — or a reasonable investigator using publicly available tools — to identify who actually sent or authorized the message. The deliberate selection of an unrelated, meaningless domain serves no purpose other than to evade spam filters, frustrate traceability, and obscure accountability, which is precisely the conduct the statute was enacted to prevent. By transmitting the email from a domain that does not identify the sender and is not authorized for use by Defendant, NDR engaged in the unauthorized use of a domain name, rendering the header information materially false and unlawful under § 17529.5(a)(1).

b. **Misrepresented Header Information In Violation of Section 17529.5(a)(2).** The email contains forged header information in violation of Business and Professions Code § 17529.5(a)(2) because the header data was deliberately structured to conceal the true sender and prevent the recipient from identifying or tracing the advertiser responsible for the message. Section 17529.5(a)(2) prohibits header information that is falsified or misrepresented, including the use of a "from" name, return address, or domain that does not accurately identify the party who initiated or benefited from the email. Here, the email was sent from a spoofed or nonsensical sender address ggpztdbkff@rofilmes.com that bears no relationship to NDR and used Unicode spacing to evade spam filters. Nothing in the header permits a recipient—or a reasonable investigator using publicly available

- 7 -

CLASS ACTION COMPLAINT

tools such as WHOIS — to determine who actually sent or authorized the email. This lack of traceability is not incidental; it is the intended effect of using fabricated header information to mask the sender's identity and evade accountability. California courts have repeatedly held that header information is misrepresented where it fails to identify the actual sender on its face and is not readily traceable to that sender, even if the advertiser's identity is later implied or suggested elsewhere. Because the header here affirmatively obscures the true sender and frustrates traceability to the responsible advertiser, it constitutes misrepresented header information in violation of § 17529.5(a)(2).

    c. **Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).** The email contains a deceptive subject line and misleading contents in violation of Business and Professions Code § 17529.5(a)(3). The subject line is both technically and substantively misleading as described in detail above.

19. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention investigating the misleading offer; searching the WHOIS database to learn who the e-mail came from; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

20. The unauthorized domain name, misleading headers and subject lines also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

CLASS ACTION COMPLAINT

21.     Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements.

## IV.    CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on behalf of all persons similarly situated and seeks certification of the following class:

> **All United States citizens in any state who received any commercial e-mail promoting any NDR product or service at a California e-mail address where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents.**

23.     The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

24.     **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

25.     **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

26.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has

retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

27. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;

b. Whether Defendant sent such messages using forged headers, falsified domains, and spoofed e-mail addresses.

28. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

29. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

30. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

31. As shown above, the spam violated one or more provisions of Section 17529.5.

- 10 -

32. Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

33. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

34. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages;

d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated:  March 25, 2026                    PACIFIC TRIAL ATTORNEYS, APC


By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class

CLASS ACTION COMPLAINT